UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE CONNER,<br><br>Plaintiff,<br><br>v.<br><br>TRISH RAVER, et al.,<br><br>Defendants. | Case No. 22-cv-08867-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

Before the Court is Defendants Trish Raver's, Lori Elefant's, and the City of Emeryville's motion to dismiss. ECF No. 10. The Court will grant the motion.

## I. BACKGROUND

Plaintiff Rochelle Conner worked for the City as an Executive Assistant to the City Manager and City Attorney from November 2015 to January 2022. ECF No. 1 ¶¶ 15, 38. In response to the COVID-19 pandemic, Emeryville required its employees, including Conner, to work remotely from March 2020 to April 2021. *Id*. ¶ 24. After resuming its in-person operations, on July 6, 2021, the City began requiring its employees to certify daily that they were not experiencing symptoms of COVID-19 and, to their knowledge, had not been in contact with someone infected with COVID-19. *Id.* ¶ 26; ECF No. 1-5 at 2.

On October 11, 2021, the City implemented a policy requiring all employees to receive the COVID-19 vaccine or, in the alternative, submit to weekly testing (the "Policy"). ECF No. 1 ¶ 29; ECF No. 1-7 at 2–3. Testing was to be conducted during work hours and costs were to be covered. ECF No. 1-7 at 3. The Policy also provided that Human Resources would "provide employees with all forms necessary to implement these requirements, including a form to request an accommodation for medical or religious reasons of the testing mandate." *Id.* On October 18,

Plaintiff filed a request for a religious accommodation in which she "specified . . . how the vaccination and testing activities violated her sincerely held religious belief according to II Timothy 1:7 and Ephesians 6:12." *Id.* ¶ 31, *see id.* ¶ 30, ECF No. 1-8 at 4.

Between October 2021 and January 2022, the City met with and corresponded with Plaintiff concerning her request. *See* ECF No. 1-14 at 2. On November 3, 2021, Plaintiff proposed three alternative accommodations that she believed to be reasonable: (1) perform the daily certification, wear a facemask, socially distance, and limit the frequency and duration of direct interaction with others; (2) relocate to a vacant workspace, continue to wear a face mask, socially distance, and limit the duration of direct interaction with other employees; or (3) work remotely. ECF No. 1-9 at 4, *see* ECF No. 1 ¶ 33.

After some additional correspondence, on December 13, 2021, City Human Resources Director Trish Raver notified Plaintiff that the City was still evaluating Plaintiff's request. ECF No. 1-10 at 2. Raver noted that Plaintiff had narrowed her requested accommodation to remote work and explained that the City offered Plaintiff "the option to take a non-invasive, non-pharmaceutical COVID-19 saliva test[]" instead of nasal swab testing as an accommodation." *Id.* Raver further solicited responses to a series of "questions to understand and make a further determination regarding how [Plaintiff's] sincerely held religious belief(s) conflicts with COVID-19 testing, and [her] willingness to accept the non-invasive saliva COVID-19 testing." *Id.*

Raver elaborated that remote work was not an acceptable accommodation for a number of reasons. First, Plaintiff "support[ed] the City Manager and the City Attorney who [were] both in the office on a full-time basis and require[d] [Plaintiff's] in-person support for a variety of tasks." *Id.* Second, the accommodation would "cause disruption to City operations" because Plaintiff "support[ed] coverage of the front desk . . . which require[d] [her] to be in the office"; Plaintiff was "responsible for opening department mail on a daily basis, as well as preparing and processing outgoing mail"; and Plaintiff's position required her "to file documents with other public entities, . . . prepar[e] administrative records, scan[], [and] provid[e] logistical support for in-person meetings." *Id.* Third, Plaintiff was a "Disaster Services Worker[,] meaning that at any time during an emergency in Emeryville [Plaintiff] may [have] be[en] called upon to report in

person at a City facility." *Id.*  Raver also notified Plaintiff that she would be placed on temporary leave with pay until the City completed its evaluation of her request. *Id.*

Plaintiff replied to Raver on December 17, 2021, and described the conflict between the policy and her beliefs as she did in her original request, as follows:

> Participating in vaccination or testing activities are medical experiments that violate my sincerely held religious belief. To subject my body to any activity that violates the teaching of scripture is a sin against God. The Word of God is the absolute sovereign authority in my life. I Timothy 1:7 says, "God has not given us the spirit of fear but of love, and power and a sound mind." (KJV) The Bible makes clear that as a child of God, I wrestle not against flesh and blood but against principalities, powers, rulers of the darkness of this world and spiritual wickedness in high places. It is my strongly held religious belief and conviction that these medical experiments and requirements are driven by spiritual wickedness in high places. I am not to submit to the "spirit of fear" because that is idolatry and a sin against God.

ECF No. 1-11 at 2; *see* ECF No. 1 ¶ 35.  On January 3, 2022, Raver replied with a final directive requiring Plaintiff comply with the Policy. *See* ECF No. 1-12.  Raver wrote,

> While you have reiterated it is your belief that COVID-19 testing and vaccination is a "medical experiment" and "driven by wickedness in high places" you repeatedly failed to answer specific questions the City asked in order to better understand the nature of your belief and the sincerity with which you hold such beliefs. For example, in its last two communications with you, the City asked you whether your religious belief objects to the use of all medical testing, and if not, why your objection is limited to the testing for COVID-19. You refused to provide responses to these questions, and others that the City has posed in order to understand the conflict between your religious beliefs and the Policy.

*Id.* at 3; *see* ECF No. 1 ¶ 36.  Raver relayed the City's conclusion that the information Plaintiff previously provided "describes a secular, medical/personal belief that does not qualify as a sincerely held religious belief as defined by the law." ECF No. 1-12 at 3.  Raver reiterated that Plaintiff's essential job duties required her to work in person and that saliva testing was the accommodation the City could offer. *Id.* at 3–4.  Raver further explained the City's determination that "there is no accommodation that the City could provide . . . that would effectively resolve the conflict between your religious beliefs and the City's requirement that employees be vaccinated or submit to weekly testing." *Id.* at 4.  The directive gave Plaintiff until January 10, 2022 to comply with the Policy and provided that, if Plaintiff failed to comply, the City would "commence actions

3

to separate [Plaintiff] from employment with the City." *Id.* at 4.

On January 7, 2022, Plaintiff replied with an inquiry into the identities of the individuals who had chosen to deny her accommodation, as well as their qualifications for assessing her religious beliefs. ECF No. 1-13 at 3. On January 26, 2022, the City Manager sent Plaintiff a notice of termination. ECF No. 1-14. The City Manager emphasized that the City "ha[d] a duty to provide and maintain a safe and healthy working environment, which is why it mandated employees to either vaccinate against COVID-19 or submit to weekly testing." *Id.* at 3. The City Manager also wrote that Plaintiff's "failure to comply with the City's [Policy] and directive constitute[d] insubordination and the willful and persistent violation of the City's policies and regulations." *Id.*

Plaintiff obtained a right to sue letter from the U.S. Equal Employment Opportunity Commission on September 30, 2022. ECF No. 1-15 at 2. Plaintiff then filed suit in this Court on December 14, 2022, naming the City, Raver, and Lori Elefant as Defendants. ECF No. 1. Plaintiff alleges that she was terminated because "she refused to surrender and violate her own religious beliefs." ECF No. 1 ¶ 42. She brings claims for (1) violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*[1]; (2) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2]; (3) slander pursuant to Cal. Civ. Code § 46, (4) violations of the Free Exercise Clause of the First Amendment pursuant to 42 U.S.C. § 1983; (5) violation of the Free Exercise Clause of Article I, Section 4 of the California Constitution; and (6) violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. ECF No. 1 ¶¶ 42–95. Plaintiff seeks damages and injunctive relief. *Id.* at 16. Plaintiff is proceeding pro se.

---

[1] Plaintiff purports to bring this claim pursuant to Cal. Code Reg. Tit. 2 § 11062, which defines "reasonable accommodation" for purposes of FEHA. *See* Cal. Gov't Code § 12940. Because Plaintiff is proceeding pro se, the Court therefore construes this claim as a FEHA claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] In addition to Plaintiff's three claims under Title VII, Plaintiff also purports to bring a separate claim pursuant to 29 C.F.R § 1605, which sets forth guidelines as to reasonable accommodations under Title VII. The Court construes this claim as a claim for failure to accommodate under Title VII.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)). As here, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

551 U.S. 89, 94 (2007).

## IV. DISCUSSION

The City argues that the Court must dismiss all of Plaintiff's claims because Plaintiff has failed to comply with California's Government Claims Act, Cal. Gov. Code § 810 *et seq.* The City alternatively argues that the Court must dismiss all claims against Raver, and that Plaintiff otherwise fails to state a claim.[3]

### A. California Government Claims Act

The California Government Claims Act, Cal. Gov. Code § 810 *et seq.*, "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1104-05 (2015). The Act "requires that 'all claims for money or damages against local public entities' be presented to the responsible public entity before a lawsuit is filed." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 734 (2007) (quoting Cal. Gov. Code § 905).

Contrary to Defendants' argument, the Government Claims Act does not apply to Plaintiff's federal claims. *Williams v. Horvath*, 16 Cal. 3d 834, 842 (1976) ("[W]hile it may be constitutionally permissible for the Legislature to place [a] substantive impediment in the path of a state cause of action, it is clear that the [S]upremacy [C]lause will not permit a like abrogation of the prerequisites of a federal civil rights litigant."); *accord Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012) ("The filing requirement does not apply to . . . causes of action based upon federal law."). Nor is compliance with the Act required for Plaintiff to bring a FEHA claim. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). However, a Plaintiff bringing a claim under FEHA is required to file a complaint with and obtain a right-to-sue notice from the California Department of Fair Employment and Housing. *Harris v.*

---

[3] The complaint contains no allegations as to Elefant, and Plaintiff concedes that dismissal of Elefant is appropriate. Accordingly, the Court dismisses all claims against Elefant. ECF No. 11 at 10. Plaintiff in opposition suggests that City Manager Christine Daniel is a Defendant. *See id.* at 9 ("Defendant Raver and City Manager Daniel were the two primary conspirators who devised schemes to specifically terminate Plaintiff's employment using the COVID19 Policy."). Plaintiff did not name Daniel as a Defendant in the complaint, however, so the Court does not consider whether Plaintiff has plausibly alleged claims against her.

United States District Court
Northern District of California

*Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012). Plaintiff has not alleged that she obtained the requisite notice. Therefore, the Court will dismiss Plaintiff's FEHA claim.

However, Conner is required to comply with the Government Claims Act to bring a claim under Cal. Civ. Code § 46(d) for slander. Plaintiff has not alleged that she presented this claim as required by the Act. For that reason, the Court will dismiss this claim.

As to Plaintiff's claim under California Constitution, for which Plaintiff seeks damages, *see* ECF No 1 ¶ 88, there is no authority holding that Article I, Section 4 of the California Constitution "provides a freestanding right of action for money damages." *Ellington v. Cal. Dep't of Corr. & Rehab.*, No. CV 21-7364-CBM (KK), 2022 WL 2167461, at *9 (C.D. Cal. Feb. 23, 2022). As a general matter, "California courts have repeatedly found that violations of fundamental rights guaranteed under the state constitution do not give rise to a private cause of action for damages." *Elrawi v. Burgess*, No. EDCV 17-2463 DMG (SS), 2018 WL 6133416, at *6 (C.D. Cal. May 21, 2018) (collecting cases). Accordingly, the Court will dismiss the claim.

### B. Claims Against Raver

#### a. Title VII

Plaintiff's Title VII claims against Raver must be dismissed because "individual defendants cannot be held liable for damages under Title VII." *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Accordingly, the Court will dismiss these claims as to Raver.

#### b. Section 1983

Defendants argue that the Court must dismiss Plaintiff's Section 1983 claims against Raver because they are duplicative of the claims brought against the City, and that qualified immunity shields Raver's conduct. ECF No. 10 at 16–18. Connor argues that Raver can be held individually liable and is not entitled to qualified immunity. ECF No. 11 at 12.

The parties' arguments as to qualified immunity are irrelevant. The complaint names Raver in her official capacity, ECF No. 1 ¶ 8, and the defense of qualified immunity is "unavailable" "[i]n an official-capacity action." *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

As to the City's remaining argument, "[w]hen both a municipal officer and a local

1  government entity are named, and the officer is named only in an official capacity, the court may

2  dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles*

3  *Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). This is because "[a]n official capacity suit

4  against a municipal officer is equivalent to a suit against the entity." *Id.* Because Plaintiff names

5  Raver in her official capacity and also names the City, the Court will dismiss Plaintiff's Section

6  1983 claims against Raver.

### C. Title VII Claims Against the City

Construed liberally, Plaintiff's Title VII claims, in substance, fall into three categories. First, Plaintiff claims that the City's accommodation of her religious beliefs would not have imposed an undue hardship. Second, Plaintiff claims that the City fired her in retaliation for seeking religious accommodations. Third, Plaintiff claims that the Policy had a disparate impact on her and those similarly situated to her. *See* ECF No. 1 ¶¶ 50–71.

#### 1. Failure to Accommodate

"To plead a prima facie case of failure to accommodate religion under Title VII . . . , a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that conflicts with an employment requirement." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)). "Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Id.* at 1224 (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)). An undue hardship presents where "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. ––, 2023 WL 4239256, at *11 (June 29, 2023). Because "[u]ndue hardship is an affirmative defense, . . . dismissal on [this] ground is proper 'only if the defendant shows some obvious bar to securing relief on the face of the complaint' or in 'any judicially noticeable materials.'" *Bolden-Hardge*, 63 F.4th at 1224 (citation omitted) (quoting *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)).

United States District Court
Northern District of California

8

Even if Plaintiff's allegations suffice to plead a prima facie case, the complaint and the documents attached to it demonstrate that the City could not have reasonably accommodated Plaintiff's religious practices without undue hardship. Plaintiff's job duties required her to provide in-person support to the City Manager and City Attorney, provide coverage at the front desk, open department mail on a daily basis, prepare and process outgoing mail, file documents with other public entities, prepare administrative records, provide logistical support for in-person meetings, and report at a City facility in the event of an emergency. ECF No. 1-10 at 2. Raver expressly noted that Plaintiff's requested accommodation—to work remotely—would "cause disruption to City operations," and the materials submitted with the complaint substantiate that contention. *Id.* For the City to have granted Plaintiff's requested accommodation would have required the City either to hire an additional employee to perform the duties Plaintiff was hired to perform, or to otherwise overhaul its operations in a manner that permitted the job of Executive Assistant to be performed remotely. Either course of action would necessarily have resulted in substantially increased costs in relation to the conduct of the City's particular business.

It is also clear from the complaint that the City engaged in the "[c]onsideration of other options," as is "necessary" under Title VII. *Groff*, 2023 WL 4239256, at *12. In rejecting Plaintiff's proposed accommodation, *see* ECF No. 1-9 at 4, the City offered Plaintiff saliva testing as an alternative to the proof of vaccination or nasal testing required by the Policy. ECF No. 1-10 at 2; ECF No. 1-12 at 4. The City also considered whether there were other vacant job positions at the City for which Plaintiff was qualified, and it determined that there were none. ECF No. 1-12 at 4. Finally, the City assessed the feasibility of placing Plaintiff on an unpaid leave of absence but determined that unpaid leave would impose an undue hardship, reasoning that "the employee who occupies the Executive Assistant position perform the essential job duties required of that position." *Id.*

For these reasons, the Court will dismiss Plaintiff's failure-to-accommodate claim.

### 2. Retaliation

"To [plead] a *prima facie* case of retaliation, a plaintiff must [allege] (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity

1   and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018,
2   1034–35. Here, the exhibits to the complaint refute Plaintiff's assertion that she was fired because
3   she sought religious accommodations. The City meaningfully considered Plaintiff's request for
4   more than three months, ECF No. 1-14 at 2, engaged in sufficient correspondence with Plaintiff in
5   an effort to reach a resolution, ECF No. 1-10–1-14, provided Plaintiff with a weeklong period to
6   comply with the Policy after it denied Plaintiff's request, ECF No. 1-12 at 4, and terminated
7   Plaintiff sixteen days after the compliance period elapsed expressly on the basis of her
8   noncompliance. ECF No. 1-14 at 2. In the absence of nonconclusory allegations to the contrary,
9   the Court concludes that Plaintiff has failed to state a retaliation claim. The Court will dismiss this
10  claim.

### 3. Disparate Impact

"To plead a prima facie case of disparate impact, a plaintiff must '(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact.'" *Bolden-Hardge*, 63 F.4th at 1227 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002)). If a plaintiff makes the requisite pleading, the burden shifts to the defendant to demonstrate that the practice "is consistent with business necessity." *Id.* This defense "permits employment practices that have a disparate impact on a protected class if the practices have 'a manifest relationship to the employment in question.'" *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). Because "business necessity is an affirmative defense," it "cannot be considered at the motion-to-dismiss stage unless the defense's success if obvious from the face of the complaint or from judicially noticeable materials." *Id.*

Even if Plaintiff's allegations suffice to plead a prima facie case, it is evident from the face of the complaint that the Policy was consistent with business necessity. The complaint and its appended exhibits demonstrate that Plaintiff's job responsibilities required her to work in person and that COVID-19 precautions in the form of, at minimum, weekly testing were required to ensure the health and safety of others in that work environment. ECF No. 1-10 at 2; ECF No. 1-12 at 3–4; ECF No. 1-14 at 3. Accordingly, the Court will dismiss this claim.

### D. Section 1983 Claims Against the City

To state a Section 1983 claim against the City, also known as a *Monell* claim, Plaintiff "must instead establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.'" *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022) (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). Accordingly, Plaintiff must allege facts sufficient to establish that a constitutional violation occurred. *See Howe v. Cnty. of Mendocino*, No. 21-16665, 2022 WL 3952395, at *2 (9th Cir. Aug. 31, 2022) ("[B]ecause Plaintiffs fail to plead sufficient facts that amount to a constitutional violation, they also fail to state a *Monell* claim.").

#### 1. First Amendment

The Free Exercise clause provides that "Congress shall make no law . . . prohibiting free exercise [of religion]." U.S. Const. amend. 1. "The right to exercise one's religion freely, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1077 (9th Cir. 2015), *cert. denied*, 579 U.S. 942 (2016) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990)). "[I]f the object of a law is to infringe upon or restrict practices because of their religion motivation, the law is not neutral . . . ." *Id.* at 1076 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)). And "[a] law is not generally applicable if it, 'in a selective manner[,] impose[s] burdens only on conduct motivated by religious belief." *Id.* at 1079 (quoting *Lukumi*, 508 U.S. at 543).

The Policy is neutral because it makes no reference to religious practice and operates without regard thereto. *See* ECF No. 1-7. The Policy is also generally applicable because all employees were required to comply with it regardless of the source of an employee's belief that they must not. *See id.*

Because the Policy is neutral and generally applicable, it "need only survive rational basis review," *id.* at 1076, which requires that it be "rationally related to a legitimate governmental purpose," *id.* at 1084. The City's proffered purpose in implementing the Policy was to "provide

11

1  and maintain a safe and healthy working environment" during the COVID-19 pandemic.  ECF No.
2  1-14 at 3.  Given the exigencies of the pandemic, this was a legitimate purpose.  *Cf. Roman*
3  *Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("Stemming the
4  spread of COVID-19 is unquestionably a compelling interest.").  Consequently, Plaintiff has failed
5  to state a Free Exercise claim.

### 2. Equal Protection

"To state a claim under [S]ection 1983 for a violation of the Equal Protection Clause, a plaintiff 'must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class,' and that plaintiff was treated differently from persons similarly situated." *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995) (alterations in original) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Here, the complaint and the appended exhibits are devoid of any facts that would support a reasonable inference that the City acted with an intent or purpose to discriminate against Plaintiff because of her religion in implementing the Policy, in refusing to allow Plaintiff to work remotely as an accommodation, or in terminating Plaintiff's employment.  Instead, the exhibits appended to the complaint provide the "obvious alternative explanation" that the Policy was implemented to ensure workplace safety, that the City could not accommodate Plaintiff's request to work remotely because her job duties required her to be physically present, and that Plaintiff was terminated for her failure to comply with the Policy. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). Additionally, Plaintiff has not alleged that other employees similarly situated were given the accommodation she requested or not terminated for a failure to comply with the Policy.  For each of these reasons, Plaintiff has thus failed to state an equal protection claim.

**CONCLUSION**

Defendants' motion is granted, and the complaint is dismissed. Plaintiff's claim under the California Constitution is dismissed with prejudice on the ground that amendment would be futile because such a claim is foreclosed as a matter of law. *See Perez v. Mortg. Electronic Reg. Sys., Inc.*, 959 F.3d 334, 341 (9th Cir. 2020) (affirming dismissal with prejudice on futility grounds where amendment "would not have changed the determination that the action was a preemptive, pre-foreclosure action seeking to challenge banks' authority to foreclose, and that such an action is impermissible under California law"). Dismissal of Plaintiff's remaining claims is with leave to amend because Defendants have not shown that amendment would prejudice them, is sought in bad faith, would produce an undue delay, or would be futile. *See AmerisourceBergen Corp v. Dialyst West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Plaintiff may file solely to attempt to cure the deficiencies identified herein within 21 days of the date of this order. Failure to file a timely amended complaint will result in dismissal with prejudice.

The case management conference scheduled for August 29, 2023 is continued to November 14, 2023 at 2:00 p.m. Updated case management statements are due November 7, 2023.

**IT IS SO ORDERED.**

Dated: August 24, 2023



JON S. TIGAR
United States District Judge