1
2
3
4                              UNITED STATES DISTRICT COURT
5                            NORTHERN DISTRICT OF CALIFORNIA
6

7    ROCHELLE CONNER,                        Case No. 22-cv-08867-JST
8                       Plaintiff,
                                              **ORDER DISMISSING SECOND**
9          v.                                 **AMENDED COMPLAINT**

10   CITY OF EMERYVILLE,                      Re: ECF No. 74
11                      Defendant.
12

13         Before the Court is Defendant City of Emeryville's motion to dismiss the Second

14   Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure

15   12(b)(6).  ECF No. 74.  The Court will grant the motion.

16         Rochelle Conner filed this lawsuit against the City challenging her termination for failing

17   to comply with the City's COVID-19 policy, which required employees to either receive a vaccine

18   or submit to weekly nasal swab testing.  The SAC alleges failure to provide a religious

19   accommodation, retaliation, violation of the First Amendment's Free Exercise Clause, and

20   violation of the Fifth Amendment's Equal Protection Clause.  In explaining the conflict between

21   her Christian beliefs and the City's policy, Conner stated that "[t]he choice to use or accept any

22   forms of external intervention to address any mental or physical health problem remains a sacred

23   personal right."  ECF No. 73 at 32.  She further explained that COVID testing and vaccination

24   requirements are "medical experiments and requirements . . . driven by spiritual wickedness in

25   high places" and that she is "not to submit to the 'spirit of fear' because that is idolatry and a sin

26   against God."  *Id*. at 33.  In response to Conner's religious accommodation request, the City also

27   offered to allow her to submit to weekly saliva-based testing in lieu of nasal swab testing.  Prior to

28   terminating her, the City also engaged in a lengthy interactive process probing Conner's beliefs

United States District Court
Northern District of California

and any available accommodations.

## I.      BACKGROUND

### A.      Incorporation by Reference and Judicial Notice

"As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  Under some circumstances, however, the Court may also consider other material in evaluating the sufficiency of the complaint.  Requesting judicial notice and citing the doctrine of incorporation by reference, both parties have asked the Court to consider supplemental documents.

First, Conner attaches several documents to the complaint: her job description, her October 18, 2021 accommodation request and attached letter from Pastor Scott Lively, an October 21, 2021 follow-up letter, her January 26, 2022 termination letter, and her California Department of Fair Employment and Housing ("DFEH") charge of discrimination form and right to sue notice. ECF No. 73 at 27–40.  The Court may incorporate by reference and thus treat a document as part of the complaint for purposes of a motion to dismiss, even where the plaintiff did not attach that document to the complaint, if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994)); *see also Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024).  Because the complaint relies on and discusses these documents, the Court incorporates them by reference into the complaint. Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Second, the City requests judicial notice of a November 22, 2021 letter from City Human Resources Director Trish Raver to Conner asking follow-up questions about her religious beliefs, and Conner's November 24, 2021 response. ECF No. 74-1.  "The court may judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b).  These communications

United States District Court
Northern District of California

United States District Court
Northern District of California

1   between Conner and Raver are not subject to judicial notice: the facts that they existed, were sent

2   on a certain date, and had certain content are not "generally known within the trial court's

3   territorial jurisdiction" and cannot be "accurately and readily determined from sources whose

4   accuracy cannot reasonably be questioned." *Id.* Rather, the only sources that could confirm the

5   accuracy of the two letters are the parties themselves. *See Hawthorne Hangar Operations, L.P., et*

6   *al. v. Hawthorne Airport, LLC, et al. Additional Party Names: Advanced Air, LLC, City of*

7   *Hawthorne, Dan Wolfe, David Wherley, Levi Stockton*, No. CV 20-10744 PA (ASX), 2021 WL

8   4184902, at *4 (C.D. Cal. Feb. 26, 2021) ("[T]he Court cannot take judicial notice of the prior

9   communications between the parties, or emails concerning the arbitration.").

10          In the alternative, however, the City argues that the November 22 and 24 letters should be

11   considered under the doctrine of incorporation by reference. ECF No. 74-1 at 3. The November

12   22 and 24 letters are referenced in the SAC. ECF No. 73 ¶¶ 34–35. They are also central to

13   Conner's claim for a failure to accommodate her religious needs because they demonstrate the

14   extent of the City's attempts to understand the conflict between its COVID policies and Conner's

15   religious beliefs and the level of detail and forthcomingness that Conner provided in response.

16   Moreover, Conner does not argue that the documents are inauthentic and does not otherwise

17   oppose judicial notice. ECF No. 75. In fact, she also seeks judicial notice of the same two letters.

18   ECF No. 75 at 10; ECF No. 76 at 1, 5–7. The Court may therefore consider these documents in

19   evaluating the motion to dismiss because they meet the test set out in *Marder*. *See Camp v. L.A.*

20   *Arena Co., LLC*, No. EDCV 22-2220 JGB (KKX), 2023 WL 4680797, at *2 (C.D. Cal. June 15,

21   2023) (on a motion to dismiss, considering interactive process and EEOC documents in a religious

22   accommodation case under the doctrine of incorporation by reference).

23          Third, Conner seeks judicial notice of three exhibits. ECF No. 76. Conner first seeks

24   judicial notice of the November 22 and 24 letters discussed above. *Id.* at 5–7. Included as original

25   attachments to the November 24 letter are also communications from Conner to Raver dated

26   October 18[1], October 21, November 3, and November 18. *Id.* at 8–15. Because the Court has

27   _____

28   [1] This is the initial accommodation request, which was also attached to the complaint. ECF No.
     76 at 9.

United States District Court
Northern District of California

1    already concluded that it may properly consider the November 22 and 24 letters under the doctrine

2    of incorporation by reference, Conner's first request for judicial notice is denied as moot.  Second,

3    Conner seeks judicial notice of the opinion in *Najean Lucky v. Landmark Medical of Michigan,*

4    *P.C.*, No. 23-2030 (6th Cir. June 12, 2024) and the final statement of decision in *Katz v. County of*

5    *Los Angeles*, No. 23STCV23907 (Cal. Sup. Ct. Mar. 25, 2025).  ECF No. 76 at 17, 22.  Courts

6    may take judicial notice of court filings and other matters of public record.  *See Reyn's Pasta*

7    *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  However, "[j]udicial notice

8    is not required for the court to consider . . . cited opinions as matters of law and potentially

9    persuasive precedents."  *Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x 666,

10   *1 n.1 (9th Cir. 2011); *see also Flower Sisters LLC v. Great Am. Ins. Co.*, No.

11   EDCV201294DMGSPX, 2021 WL 4472904, at *1 (C.D. Cal. May 20, 2021).  Indeed, "it is

12   inappropriate to request that the Court take judicial notice of legal authority, as judicial notice is

13   reserved for 'adjudicative fact[s] only.'"  *Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-

14   GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal. Aug. 15, 2013).  The motion for judicial notice of

15   the decisions in *Najean Lucky* and *Katz* is therefore also denied.

16        Fourth, Conner attaches several documents to her opposition to the motion to dismiss,

17   including the City's COVID policies[2] and documents from or related to the interactive process

18   between Conner and the City concerning her religious accommodation request.[3]  She also includes

19   documents that appear to be from an interactive process between the City and another employee,

20   April Shabazz.[4]  Conner does not seek judicial notice of these documents and they were not

21   _____

22   [2] These documents are (1) a July 2021 City COVID policy, ECF No. 75-1, and (2) vaccination and testing requirements imposed by the City in October, 2021, ECF No. 75-2.

23   [3] These documents are (1) a letter sent by Conner to Human Resource Director Trish Raver on November 3, 2021, ECF No. 75-3; (2) the November 22, 2021 letter from Raver to Conner, ECF

24   No. 75-8 at 4; (3) a December 17, 2021 letter from Conner to Raver, which references the earlier November 22 and 24 correspondences and a December 13 memorandum from Raver to Conner,

25   ECF No. 75-5; (4) a "Second Notice of Religious Exemption" from Conner to Raver dated January 7, 2022, referencing a January 3, 2022 "Religious Accommodation Denial," ECF No. 75-

26   6; (5) a professional reference letter from Conner's supervisor, Brad Farmer, describing Conner's duties and performance, dated March 29, 2022, ECF No. 75-14; (6) an affidavit from Farmer

27   stating that allowing Conner to telework would not pose a hardship for the City, ECF No. 75-4 at 3; (7) a letter dated June 27, 2022 from Pastor Gary Mortara attesting to Conner's Christian faith, ECF No. 75-4 at 2.

28   [4] These documents are (1) a Religious Exemption Request for April Shabazz, ECF No. 75-7; (2) a

United States District Court
Northern District of California

attached to the complaint.  She includes no declaration establishing their authenticity.  Regardless, most of the documents do not meet the requirements of Rule 201(b) for the reasons already explained, because they are correspondence between the parties or statements by third parties. The two documents encapsulating the City's COVID policy could be subject to judicial notice to the extent that they are "public records available on government websites" and whose authenticity the city clerk or another official could verify.  *Barich v. City of Cotati*, No. 21-CV-00034-EMC, 2021 WL 3053204, at *6 (N.D. Cal. July 20, 2021); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (affirming district court's grant of judicial notice of documents on file with the City Clerk of the City of Santa Monica and those accessible on Santa Monica's official website).  In any case, Conner does not provide any of the context necessary for the Court to determine whether the COVID policy documents are subject to judicial notice because, again, she has not moved for judicial notice of them.

Although Conner provides no legal basis for the Court to consider the documents concerning the City's COVID policies, Conner's interactive process with the City, and her job responsibilities (ECF Nos. 75-1–75-6; ECF No. 75-8 at 3–4, ECF No. 75-14), the City nonetheless does not object to the Court's consideration of them.  ECF No. 80-1 at 4 (objecting to the exhibits attached to Conner's complaint concerning April Shabazz, but not to those concerning Conner). In fact, noting that she had attached these documents to earlier versions of the complaint, the City initially objected to Conner's failure to attach them to the SAC.  ECF No. 74 at 3 ("Conner omits from the SAC most of the documents submitted with her initial Complaint that reflect the City's COVID policy and the parties' interactive process correspondence, presumably to inhibit the City's ability to argue that the policy was neutral and generally applicable, and that the City complied with EEOC guidance and the law when engaging in the interactive process with Conner."); *id.* at 13 ("The Court should treat the interactive process documents as part of the SAC

---

November 22, 2021 letter from Raver to Shabazz, ECF No. 75-8 at 2; (3) a December 14, 2021 letter from Raver to Shabazz, ECF No. 75-9; (4) a December 20, 2021 letter from Shabazz to Raver, ECF No. 75-10; (12) a January 7, 2022 letter from Raver to Shabazz, ECF No. 75-11; (5) a March 1, 2022 letter from Shabazz to Raver, ECF No. 75-12; (6) a March 9, 2022 letter from Charles S. Bryant to Shabazz, ECF No. 75-13.

1    under the doctrine of incorporation by reference or the doctrine of judicial notice.").  Moreover,

2    these interactive process documents are referenced in the complaint and central to Conner's claims

3    for failure to accommodate.  They are also consistent with the allegations in the complaint and do

4    not appear to add any information that would alter the Court's analysis.  Seeing no reason to

5    exclude them, the Court therefore considers these documents.  *See Draper v. Coombs*, 792 F.2d

6    915, 924 (9th Cir. 1986) (acknowledging that courts treat pro se plaintiffs with "great leniency"

7    "in evaluating [their] compliance with the technical rules of civil procedure).

8        A different analysis applies to the documents pertaining to the interactive process between

9    the city and Shabazz.  ECF No. 75-7; ECF No. 75-8 at 1–2; ECF Nos. 75-9–75-13.  For the

10   reasons explained above, these documents are not subject to judicial notice.  Additionally, they are

11   not described in the complaint and have not been incorporated by reference.  Even if the

12   documents might be helpful to Conner's ability to make a case for discrimination, admitting those

13   documents now would allow Conner to amend the complaint after the deadline to amend passed

14   and the motion to dismiss was filed.  ECF No. 72 at 9–10 (setting Conner's deadline to amend the

15   complaint); *see Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is

16   axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

17   dismiss.").  The Court will not consider the documents attached to the opposition to the motion to

18   dismiss concerning April Shabazz.

19       **B.    Facts**

20       The complaint and the documents properly subject to the Court's consideration at this

21   stage put forth the following facts.

22       In November of 2015, Rochelle Conner commenced employment as an Executive

23   Assistant to the City Manager and City Attorney of Emeryville, which she retained until January

24   26, 2022.  ECF No. 73 ¶ 9.  That role required "regular contact with government officials, City

25   Council or board or commission members, representatives of business or community

26   organizations, the public, and all levels of City personnel, to exchange information and explain

27   administrative policies and procedures."  *Id*. at 27.

28       In July 2021, the City issued a return-to-work policy which contained no COVID testing or

United States District Court
Northern District of California

vaccination requirements.  ECF No. 73 ¶ 29.  On August 23, 2021, Conner submitted a notice of religious exemption to the city.  *Id*. ¶ 30.  In October 2021, the City revised its policy, ordering all employees to submit to testing or submit proof of vaccination for COVID-19, but allowing employees to seek an exemption for religious reasons.  *Id*. ¶¶ 2, 31.  Conner submitted an accommodation request on October 18, 2021, attaching a letter from the First Century Bible Church in Memphis, Tennessee, signed by church founder Pastor Scott Lively.  *Id*. ¶ 32; *id*. at 31–32.  The letter explained Conner's belief that individuals should have the liberty "to pursue their own happiness subject to the revealed guidance of God and, among other things, to determine for themselves what, if any, health measures they wish to pursue."  *Id*. at 32.  The letter elaborated:

> Our Church believes in the absolute sovereignty of God in all things, and His delegation of authority to human beings over the control of their own minds and bodies . . . .  We believe we possess both the God-given ability to reason and the gift of free will to make our own choices regarding our lives, inclusive of our health and well-being, and that individuals should be the ones to make their own decisions pertaining to any and all medical services and medications, including all decisions regarding vaccines no matter what conditions—including pandemics—may be present.

*Id*.  The letter stated Conner's belief that "[t]he choice to use or accept any forms of external intervention to address any mental or physical health problem remains a sacred personal right" and that she "recognize[s] only God as our ultimate authority in all things, and that He has delegated to each of us authority over our own lives and choices in matters of health."  *Id*.

In response to an inquiry from the City, Conner provided further information about her beliefs and how they conflicted with the vaccination and testing requirements on October 21.  *Id*. ¶ 33; *id*. at 33.  She explained that:

> Participating in vaccination or testing activities are medical experiments that violate my sincerely held religious belief.  To subject my body to any activity that violates the teaching of scripture is a sin against God. . . .The Bible makes clear that as a child of God, I wrestle not against flesh and blood but against principalities, powers, rules of the darkness of this world and spiritual wickedness in high places.  It is my strongly held religious belief and conviction that these medical experiments and requirements are driven by spiritual wickedness in high places.  I am not to submit to the "spirit of fear" because that is idolatry and a sin against God.

*Id*. at 33.  She also asserted that Pastor Lively's letter pertained to COVID testing in addition to

the vaccine because testing is a "health mandate." *Id.*

On November 3, 2021, Conner offered several alternatives to the City. *Id.* ¶ 4. She first proposed to continue working in person while wearing a mask, social distancing, limiting the duration and frequency of contact with other staff, and regularly certifying her COVID exposures and health status. *Id.* ¶ 40. She alternatively proposed that the City relocate her to a vacant office with a door. *Id.* ¶ 43. As a third choice, Conner proposed that she work remotely, picking up and delivering work assignments twice monthly prior to the arrival of other staff. *Id.* ¶ 44.

On November 22, 2021, the City asked Conner several questions regarding her religious beliefs and COVID-19. *Id.* ¶ 34. The City asked her to describe the nature of her objection to COVID testing, how complying with the testing requirement would substantially burden her religious exercise, how long she has held the operative religious belief, whether and how recently she has received any other medical testing, and whether and why her objection is limited to some tests and not others. ECF No. 74-1 at 6–7. On November 24, Conner responded to the City's questions. ECF No. 73 ¶ 35. Her complaint describes her responses. *Id.* [5] While not identical to

---

[5] Conner's complaint states that she provided the following responses:

> Q1. Please describe the nature of your objection to the COVID-19 testing requirement.
> A1: Subjecting my body to any activity that violates the teaching of scripture is a sin against God. It is my strongly held religious belief and conviction that these medical experiments are driven by spiritual wickedness in high places. Ephesians 6:12
> Q2. Would complying with the COVID-19 testing requirement substantially burden your religious exercise? If so, please explain how.
> A2: I am not to submit to the spirit of fear because that is idolatry and a sin against God. II Timothy 2:7
> Q3. How long have you held the religious belief underlying your objection?
> A3: The sincerity of my Christian faith is a well-established fact within the City of Emeryville. I have openly demonstrated my faith during the past six years of my employment with the City of Emeryville.
> Q4: Please describe whether, as an adult, you have received any testing against any other disease (such as flu test, strep throat, or a TB test) and, if so, what medical test you most recently received and when, to the best of your recollection.
> A4: I have answered all relevant questions according to my sincerely held religious beliefs. Any questions regarding my medical history are not applicable to my request for accommodation.

United States District Court
Northern District of California

the complaint, Conner's November 24 letter is materially similar in substance: Conner referred the City back to the answers she had already provided and otherwise refused to answer its questions, stating that her earlier submissions had already adequately identified her sincerely held religious belief and explained how it conflicted with the City's vaccine and testing requirements. ECF No. 74-1 at 8; ECF No. 76 at 7. In the November 24 letter, Conner also asked the City whether they were questioning the religious nature of her belief or her religious sincerity, and asked what "objective basis" the City had for its questions. *Id*.

The City denied Conner's request for religious exemption and accommodation on January 3, 2022, concluding that Conner's beliefs were "secular, medical/personal but not religious." ECF No. 73 ¶¶ 4, 36. The City also explained that Conner's proposed accommodations were unreasonable or unsafe. *Id*. ¶ 50.

Conner refused to comply with the testing and vaccination requirements and was therefore terminated on January 26, 2022. *Id*. ¶ 6. The termination notice explained that Conner's refusal to comply with the COVID policy was an act of insubordination and a willful violation of a lawful policy that "compromise[d] the safety of the City's workspace" and "endanger[ed] the health of City's employees and visitors." *Id*. at 36.

---

Q5. If you do not have a religious objection to the use of all medical testing, please explain why your objection is limited to a particular test.
A5: It is my strongly held religious belief and conviction that these medical experiments and requirements are driven by spiritual wickedness in high places Ephesians 6:12. The choice to use or accept any forms of eternal intervention to address any mental or physical health problem remains a sacred personal right, notwithstanding the opinion of other people, including medical professionals and government officials.
Q6. If there are any other medical testing that you refuse because of the religious belief underlying your objection, please identify them.
A6: I have answered all relevant questions according to my sincerely held religious beliefs. Any questions regarding my medical history are not applicable to my request for accommodation. The foundation of my beliefs is rooted in my faith in God and obedience to Him and the Holy Scripture.

ECF No 73 ¶ 35.

United States District Court
Northern District of California

### C.      Procedural History

Conner filed the original complaint in this matter on December 14, 2022, naming the City and two individuals as defendants.  ECF No. 1.  The Court granted the defendants' motion to dismiss that complaint on August 24, 2023.  ECF No. 22.

On September 12, 2023, Conner filed her first amended complaint ("FAC"), naming only the City as a defendant and asserting causes of action for failure to accommodate under Title VII and the California Fair Employment and Housing Act ("FEHA") and violation of the First Amendment Free Exercise clause under 42 U.S.C. § 1983.  ECF No. 24.  On September 26, 2023, the City filed a motion to dismiss.  ECF No. 25.

On March 27, 2024, the Court granted the motion in part and denied it in part. ECF No. 39.  The Court first dismissed the FEHA claims because Conner had not alleged compliance with the California Government Claims Act, which requires exhaustion of administrative remedies.  *Id*. at 4–5.  While Conner had attached a right to sue letter from the California Department of Fair Employment and Housing, she had not alleged that the complaint resulting in that letter alleged facts matching the complaint before this Court.  *Id*. at 5.

The Court next found that Conner had adequately alleged a bona fide religious belief in conflict with the COVID vaccine and testing requirements.  *Id*. at 6–7.  It further concluded that Conner's failure to accommodate claim survived the motion to dismiss because she had "sufficiently alleged that front desk responsibilities were not core to her role as an Executive Assistance, and that at least one other role existed in the Finance Department for which she was qualified," suggesting that reasonable accommodations were possible.  *Id*. at 9.

Construing the pro se complaint as also asserting causes of action for discrimination and retaliation under Title VII and FEHA, the Court also found that the City had not moved to dismiss Conner's retaliation claim, which it therefore did not analyze or dismiss.  *Id*. at 9–10.

Next, the Court dismissed Conner's claims for discrimination under Title VII because, although Conner alleged that she was fired while a Muslim coworker was allowed to continue working, she had not alleged that the Muslim employee was similarly situated in terms of job function nor had she alleged that Shabazz had rejected the same accommodation offers that

Conner had rejected.  *Id.* at 11.

As to Conner's Free Exercise claim under Section 1983, the Court dismissed it because the City's COVID policy was "neutral, generally applicable, and rationally related to the legitimate governmental purpose of providing a safe and healthy working environment during the COVID-19 pandemic." *Id.* at 13 (quoting ECF No. 22 at 11–12).  Dismissal was with prejudice because Plaintiff had already been granted leave to amend to cure that deficiency and had failed to do so. *Id.* at 14.  Finally, the Court dismissed Conner's Equal Protection claim under Section 1983 for the same reasons that it dismissed her Title VII discrimination claim: Conner had not shown that she was similarly situated to Shabazz or the employees who were allegedly allowed to continue working indoors behind closed doors without receiving COVID testing.  *Id.*

Conner did not amend her complaint.  On November 11, 2024, the City moved for judgment on the pleadings on the two surviving claims—Title VII retaliation and failure to accommodate.  ECF No. 56.

With respect to Title VII retaliation, the City pointed out that they had not moved to dismiss the retaliation claims because Conner had not clearly re-pleaded them in the FAC.[6]  ECF No. 56 at 8–9.  Conner responded that she did not understand that she needed to replead the retaliation claim.  ECF No. 59 at 9.

On June 23, 2025, the Court ruled that Conner should be given another chance to more fully plead her retaliation claim.  ECF No. 72 at 4–5.  As to the failure to accommodate claim, the Court granted judgment on the pleadings to the City in light of *Weiss v. Permanente Med. Grp.*, Inc., 738 F. Supp. 3d 1217 (N.D. Cal. 2024), which concluded that religious claims based on assertions of "blanket privilege" did not sufficiently communicate to the employer the conflict between the plaintiff's beliefs and the challenged employer policy.  *Id.* at 8–9.

Conner filed the SAC on July 20, 2025.  ECF No. 73.  The City filed a motion to dismiss on August 4, 2025.  ECF No. 74.  Conner opposed the motion on August 17, 2025.  ECF No. 75.

---

[6] In interpreting her First Amended Complaint as stating a claim for retaliation, the Court relied on Conner's statement that the City "has engaged in indirect coercion and penalties on Plaintiff for the exercise of her religion."  ECF NO. 39 at 9 (quoting ECF No. 24 ¶ 56).

United States District Court
Northern District of California

The City replied on August 25, 2025.  ECF No. 80.  Finally, on October 2, 2025, the City filed a notice of the Ninth Circuit's recent decision in *Detwiler v. Mid-Columbia Medical Center*, 156 F.4th 886 (9th Cir. 2025), which the Court considers in deciding this motion.  ECF No. 86.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, mere legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678–79.

As here, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted).

## IV.    DISCUSSION

### A.    Failure to Provide Religious Accommodation in Violation of Title VII

"Title VII of the Civil Rights Act of 1964 [makes] it unlawful for covered employers 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion."  *Groff v. DeJoy*, 600 U.S. 447, 457 (2023) (quoting 42

United States District Court
Northern District of California

1    U.S.C. § 2000e–2(a)(1)).  Employers must "'make reasonable accommodations to the religious

2    needs of employees' whenever that would not work an 'undue hardship on the conduct of the

3    employer's business.'"  *Id*. (quoting 29 C.F.R. § 1605.1 (1968)).

4        Claims for religious discrimination based on a failure-to-accommodate theory are

5    evaluated using the *McDonnell Douglas* burden-shifting framework.  A plaintiff must first set

6    forth a prima facie case that (1) she has a bona fide religious belief, the practice of which conflicts

7    with an employment duty; (2) she informed the defendant of the belief and conflict; and (3) the

8    defendant discharged, threatened, or otherwise subjected her to an adverse employment action

9    because of her inability to fulfill the job requirement.  *Peterson v. Hewlett-Packard Co.*, 358 F.3d

10   599, 606 (9th Cir. 2004) (citation omitted); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir.

11   1993).  "If [the plaintiff] makes out a prima facie failure-to-accommodate case, the burden then

12   shifts to [the defendant] to show that it initiated good faith efforts to accommodate reasonably the

13   employee's religious practices or that it could not reasonably accommodate the employee without

14   undue hardship."  *Id*. (citation and quotations omitted).

15       Conner asserts that she need not plead a prima facie case of religious discrimination to

16   survive a motion to dismiss.  ECF No. 75 at 15.  The law is somewhat muddled in this area.  In

17   *Swierkiewicz v. Sorema N.A.*, the Supreme Court rejected a Second Circuit rule that required Title

18   VII plaintiffs to plead the elements of a prima facie case of discrimination under *McDonnell*

19   *Douglas*

20           because the *McDonnell Douglas* framework does not apply in every
            employment discrimination case. For instance, if a plaintiff is able to
21          produce direct evidence of discrimination, he may prevail without
            proving all the elements of a prima facie case.
22

23   534 U.S. 506, 511 (2002) (citation omitted).  *Swierkiewicz* therefore emphasized the fact that

24   *McDonnell Douglas* burden-shifting is evidentiary in nature: it provides a means for courts to

25   evaluate the sufficiency of the evidence rather than the sufficiency of the pleadings.  *Id*. at 510,

26   512.  Relying on the pleading standard set out in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), the

27   Court in *Swierkiewicz* also held that employment discrimination plaintiffs need only plead a short

28   and plain statement sufficient to put the employer on notice of their claim.  *Id*. at 512.  But when

United States District Court
Northern District of California

13

the Court overruled *Conley* five short years later and announced the more stringent pleading standard in *Twombly*, it purported not to disturb *Swierkiewicz*.  *Twombly*, 550 U.S. at 569–70.  In reconciling *Twombly* with *Swierkiewicz*, the Supreme Court emphasized *Swierkiewicz*'s rejection of a *heightened* pleading standard for employment discrimination cases, affirming that employment discrimination cases are subject to the same pleading standard as any other case.  *Id.* at 570.

*Twombly*, and later *Iqbal*—which did not discuss *Swierkiewicz*—require plaintiffs to allege specific facts sufficient to make a claim plausible.  Because *Swierkiewicz* held that discrimination plaintiffs need only satisfy the lower requirements of *Conley* notice pleading, it is in some tension with the Court's later precedents.  Grappling with this "perplexing" tension, the Ninth Circuit holds that complaints must, at a minimum (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Following on *Starr*, the Ninth Circuit held in a Title IX case that Rule 8 as interpreted in *Twombly* and *Iqbal* governs the plaintiff's burden on a motion to dismiss and *McDonnell Douglas*'s evidentiary standard—with its requirement that the plaintiff make a prima facie case—does not apply.  *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019); *see also Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (same conclusion in the Title VII context).

Nonetheless, the Ninth Circuit and district courts within it continue to treat the *McDonnell Douglas* prima facie case as relevant to evaluating a motion to dismiss.  *See Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) ("To plead a prima facie case of failure to accommodate religion under Title VII and FEHA, a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that conflicts with an employment requirement."); *Detwiler*, 156 F.4th at 893 ("The plaintiff must first plead a prima facie case of failure to accommodate her religion." (citing *Bolden-Hardge*, 63 F.4th at 1222)); *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019) (holding that a plaintiff "need not prove the prima

facie elements to survive a motion to dismiss but must plead the general elements to make a claim

facially plausible"); *Cervantes v. Stockton Unified Sch. Dist.*, No. 2:15-CV-00060-KJM-AC, 2015

WL 3507416, at *4 (E.D. Cal. June 3, 2015) ("District courts in this circuit regularly look to the

elements of a *prima facie* case to inform a decision on a motion to dismiss."); *Weiss*, 738 F. Supp.

3d at 1222 (on a motion to dismiss, evaluating whether "Weiss has failed to plead a prima facie

failure-to-accommodate claim").

     Here, Conner alleges that the City failed to accommodate her religion by requiring her

either to receive the COVID-19 vaccine or to test weekly for the presence of the COVID-19 virus.

The SAC does not allege sufficient facts to render Conner's claims plausible because, like the

FAC, it does not allege that she provided the City with enough information about her "religious

needs" and "the conflict between her religious belief and the employer's practice or policy" to

allow the employer to ensure it had met its obligations under Title VII.  ECF No. 72 at 7 (citing

*Weiss*, 738 F. Supp. 3d at 1224).[7]  Although the burden to allege a conflict with religious beliefs is

"fairly minimal," a court need not take "conclusory assertions of violations of religious beliefs at

face value."  *Bolden-Hardge*, 63 F.4th at 1223.  The SAC fails to add new allegations concerning

the explanation Conner provided to her employer and, like the FAC, shows that Conner provided

to her employer "generic explanations amount[ing] to the kind of 'blanket privilege' that would

[result] in a 'limitless excuse for avoiding all unwanted obligations' and provided little basis for

[the employer] to evaluate the extent of her religious beliefs' potential conflict with the

[employer's COVID] Policy."  *Weiss*, 738 F. Supp. 3d at 1223.

     Like the FAC, the SAC alleges that Conner explained to her employer that her religion

---

[7] Conner asserts that she need not show that she sufficiently informed the City of the conflict between her religious beliefs and its policies because "Title VII does not contain a notice requirement."  ECF No. 75 at 21 (citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015)).  She misinterprets *Abercrombie*, however, which merely holds that Title VII prohibits discriminatory motives regardless of the employer's knowledge.  575 U.S. at 773.  In other words, "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed."  *Id.*  Conner has alleged no facts that would constitute direct evidence of a discriminatory motive by the City; to make her claims plausible in the absence of such direct evidence, then, she needs to show that the City was on notice of her need for an accommodation.

United States District Court
Northern District of California

holds that "individuals should be the ones to make their own decisions pertaining to any and all medical services and medications, including all decisions regarding vaccines."  ECF No. 73 ¶ 19; ECF No. 24 ¶ 24.  The SAC, like the FAC, also alleges that Conner explained to the City that "as a child of God, [she] wrestle[s] not against flesh and blood but against principalities, powers, rulers of the darkness of this world and spiritual wickedness in high places" and that "it is [her] strongly held religious belief and conviction that these medical experiments and requirements are driven by spiritual wickedness in high places."  ECF No. 73 ¶ 20; *id*. at 33.  Finally, she explained to the City that she "is not to submit to the 'spirit of fear' because that is idolatry and a sin against God." *Id*.

When the City asked follow-up questions probing the boundaries of her objections to medical interventions and earthly mandates, Conner refused to answer.  The City asked Conner to describe the nature of her objection to COVID testing, why it would burden her religious exercise, how long she had held the underlying belief, whether she objects to only COVID tests or also other medical tests, and whether she has received any other medical testing as an adult.  ECF No. 74-1 at 6–7.  Conner referred the City back to her earlier submissions, inquired as to the City's "objective basis" for questioning her, and otherwise did not answer the City's questions. *Id*. at 8.

In *Weiss*, the Plaintiff asserted that her religion as a Christian Jew prohibited her from accepting foreign materials into her body.  *Weiss*, 738 F. Supp. 3d at 1220–21.  She admitted, however, that this was the first time she had cited her religious beliefs to decline a vaccination.  *Id*. at 1223.  When the City asked Weiss why the COVID vaccine was different, she explained that she had recently reconnected with her Jewish roots.  *Id*.  She also "asserted that her religion prohibited her from accepting 'any chemicals/substances that would be unclear as guidance from my Creator,' and that her religious beliefs 'inform[ed] all meaning and purpose' in her life."  *Id*. at 1224.  When asked follow-up questions very similar to those asked of Conner, Weiss likewise declined to answer.  *Id*.  In that court's view, Weiss's sparse explanation constituted an assertion of "blanket privilege" insufficient to provide the city a basis for assessing the extent of the conflict between its policy and Weiss's beliefs.  *Id*. at 1223.

The privilege asserted by Conner is even broader than that asserted by Weiss.  Conner does

not and cannot trace her objection to a general religious prohibition on imbibing "foreign substances" because saliva-based COVID testing does not entail imbibing any foreign substances. Conner suggests that her religion requires her to decline medical interventions she disagrees with and asserts that she must avoid submitting to the spirit of fear. ECF No. 73 ¶¶ 19–20; *id.* at 32–33. But she does not explain why COVID saliva testing is an intervention with which she disagrees or why taking those tests would constitute submitting to the spirit of fear. *See id.* In fact, she explicitly refused to explain the boundaries of the prohibition on submitting to the spirit of fear (by refusing to explain her position on other kinds of medical tests, for instance). ECF No. 74-1 at 8. Without further explanation, Conner's assertion that taking COVID tests represents "submission to the spirit of fear" fails to put the City on notice of the genuine conflict between her beliefs and the City's COVID policy because it asserts a "blanket privilege" that would result in a "limitless excuse for avoiding all unwanted obligations." *Weiss*, 738 F. Supp. 3d at 1223. In fact, any measure designed to protect public health or safety could be described as motivated by "the spirit of fear" and thus subject to prohibition under the beliefs expressed by Conner.

Conner's explanation that that COVID testing requirements are driven by "spiritual wickedness in high places" fares no better. ECF No. 73 ¶ 20; *id.* at 33. Here again, without any further explanation or limiting principle, this assertion would exempt Conner from any policy she disagrees with. Asserting that a certain policy is "spiritual[ly] wicked[]" provides no more information than asserting that one's religion prohibits it; "spiritually wicked" and "prohibited by my religion" are effectively synonymous. Were the Court to find the assertion of "spiritual wickedness" sufficient, it would eviscerate the requirement that the employee provide the employer an explanation sufficient to put it on notice of a genuine conflict with the employee's religious beliefs. And again, in asking its follow-up questions, the City gave Conner an opportunity to explain what about COVID testing made it spiritually wicked—which could have moved her objection from a claim of blanket privilege to a legitimate religious objection—but she refused to explain further. ECF No. 74-1 at 8.

Conner gestured at a further explanation in her statement that COVID testing is a "medical experiment." ECF No. 74 ¶ 20; *id.* at 33. But the Ninth Circuit has recently foreclosed precisely

this type of explanation for a religious objection on the grounds that it is not religious at all, but secular, scientific, or medical.  *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886 (9th Cir. 2025).  Detwiler, seeking a religious accommodation exempting her from her employer's mandatory COVID vaccination policy, explained that she was a "practicing Christian who believes her body is a temple of the Holy Spirit and sincerely believes she has a 'religious duty to avoid defiling her "temple" by taking in substances that the Bible explicitly condemns or which could potentially cause physical harm to her body.'"  *Id*. at 890.  She further explained that "[a]s I have prayed about what I should do, the Holy Spirit has moved on my heart and conscience that I must not participate in COVID testing that causes harm."  *Id*. at 891.  Noting that Detwiler's belief that the COVID vaccine and nasal swab testing were harmful rested on her underlying opinion that they contained carcinogenic and toxic substances, the court concluded that Detwiler's beliefs were medical and scientific in nature, not truly religious.  *Id*. at 890, 895.

The court further held that an employee cannot allege a bona fide religious belief merely through an "unadorned conclusion" labeling a certain practice "religious."  *Id*. at 893.  "Invocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction.  To hold otherwise would destroy the pleading standard for religious discrimination claims, allowing complainants to invoke magic words and survive a dismissal without stating a prima facie case."  *Id*. at 895.  *Detwiler* therefore provides further support for the Court's conclusion.  Conner may not dress up the secular judgment that COVID testing is a "medical experiment" in religious language—including "spiritual wickedness" and "the spirit of fear"—to survive dismissal.

Finally, the Court notes that the handful of new allegations in the SAC do not help Conner's religious accommodation claim, for two reasons.  First, Conner does not allege that she provided these new allegations to the City, which she must do to establish that she put her employer on sufficient notice of her religious beliefs and their conflict with City policy.  Second, her new allegations suffer from the same deficiencies as those described above.  The SAC asserts that Conner "views compliance with certain government-imposed pandemic measures[—]particularly mandatory COVID-19 testing and vaccination[—]as an act of submission to worldly

1    powers that conflicts with her obligation to submit only to God's authority."  ECF No. 73 ¶ 24.

2    Insofar as Conner identifies the conflict with her religious beliefs as the "submission to worldly

3    powers," she asserts blanket privilege that would exempt her from any government policy she

4    disagrees with.  The same is true of her assertion that the COVID-19 testing and vaccination

5    policies "demanded she replace her fundamental religious obligation to rely upon divine protection

6    with false reliance on human intervention" and her assertion that her "religious faith is a

7    fundamental unalienable right to practice according to the dictates of her conscience."  ECF No.

8    73 ¶¶ 14, 28.[8]

9         As the Court has noted, the deficiencies in the explanation Conner provided to the City

10   were compounded by her refusal to answer the City's follow-up questions.  Conner argues that

11   these follow-up questions were illegitimate because they "exceeded sincerity tests used by courts"

12   to evaluate plaintiffs' religious beliefs.  ECF No. 75 at 22–23.  But the City's questions were

13   clearly geared at understanding whether Conner held a legitimate religious objection to COVID

14   testing, or whether she instead sought to disguise practical, medical, or scientific objections as

15   religious ones.  *See Weiss*, 738 F. Supp. 3d at 1224 (describing similar employer follow-up

16   questions as permitted by EEOC Guidance and Title VII itself because they were "an appeal for

17   clarity about the conflict between [the plaintiff's] newfound beliefs and the Policy"); *Heller*, 8

18   F.3d at 1439 (holding that the employer may seek "enough information about an employee's

19   religious needs to permit the employer to understand the existence of a conflict between the

20   employee's religious practices and the employer's job requirements").  If Conner had no objection

21   to other forms of medical testing, for instance, that could suggest that her objection to the COVID

22   vaccine was driven by personal preference rather than an underlying religious prohibition on

23   certain medical interventions.  Likewise, if Conner's objection to medical testing was only as old

24   as the pandemic, while her Christian beliefs dated back much farther, that could suggest that her

25

26   _____

27   [8] In her opposition, Conner also states that she could not receive the COVID vaccine because of
     her belief that her body is a temple of the Holy Spirit.  ECF No. 75 at 20.  She did not allege in her
     complaint that she ever provided this explanation to the employer, *see* ECF No. 73, and the
28   interactive process documents she has provided show that she did not, *see* ECF Nos. 75-1–75-8, so
     the Court does not consider it.

United States District Court
Northern District of California

objections were not truly religious in nature.

Emphasizing the plaintiff's "minimal" burden to establish a bona fide religious belief in conflict with an employment duty, *Bolden-Hardge*, 63 F.4th at 1223, Conner cites cases from other districts that have found sparse assertions of religious beliefs sufficient to put the employer on notice of a conflict. *See Thompson v. Asante Health Sys.*, No. 1:23-CV-00486-CL, 2023 WL 7348812, at *4 (D. Or. Sept. 21, 2023), *report and recommendation adopted*, No. 1:23-CV-00486-CL, 2023 WL 7326496 (D. Or. Nov. 7, 2023) (finding sufficient to put the employer on notice of a conflict one employee's assertion that her "body [wa]s a temple of the Holy Spirit" and that she was required "to protect the physical integrity of [her] body against anything [she] believe[s] to be harmful to [her] body"); *Camp v. L.A. Arena Co., LLC*, No. EDCV 22-2220 JGB (KKX), 2023 WL 4680797, at *3, 7 (C.D. Cal. June 15, 2023) (finding sufficient to put the employer on notice of a conflict one employee's assertion that "his body belongs to God and is a temple of the Holy Spirit" and that "it is against his religion to ingest or inject his body with possible harmful substances"); *Rolovich v. Washington State Univ.*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *1, 3 (E.D. Wash. May 30, 2023), *judgment entered*, No. 2:22-CV-0319-TOR, 2023 WL 5120279 (E.D. Wash. July 27, 2023) (holding that "Plaintiff's claim that his Catholic faith informed his decision not to receive the COVID-19 vaccine," without any further elaboration, "is sufficient at the pleading stage to meet the prima facie element that he has a bona fide religious belief" and that the religious beliefs conflict with his employment requirements).

These district court cases, however, predated both *Weiss* and *Detwiler*. Under the rule announced in *Detwiler*, the district courts in *Thompson* and *Camp* are unlikely to have reached the same outcomes because both cases involved plaintiffs whose objections to COVID testing or vaccination were ultimately secular in nature. *See Thompson*, 2023 WL 7348812, at *4–5. In *Camp*, for instance, the plaintiff explained that "taking an experimental vaccine that has been proven to be ineffective at stopping Covid-19; but instead has been proven to cause enlarged hearts, heart attacks, as well as a litany of other adverse side effects falls under the purview of knowingly desecrating and destroying my body" and is therefore prohibited by his "Lord and Savior Jesus Christ." *Camp*, 2023 WL 4680797, at *3.

United States District Court
Northern District of California

Similarly, the district courts cited by Conner may have reached a different result had they considered *Weiss*'s discussion of a plaintiff's obligation to provide the employer with sufficient notice of the specific conflict between the challenged policy and the plaintiff's beliefs. *See, e.g.*, *Camp*, 2023 WL 4680797, at *3 (Camp refusing to answer reasonable follow-up questions and instead stating "I find this question invasive, overreaching and outside the scope of my employer's [] realm of responsibilities"); *Rolovich*, 2023 WL 3733894, at *1, 3 (holding that "Plaintiff's claim that his Catholic faith informed his decision not to receive the COVID-19 vaccine," without any further elaboration, sufficiently put employer on notice).

Conner also cites cases from other circuits purporting to establish the sufficiency of the explanation she provided to the City concerning her religious beliefs. ECF No. 75 at 6. Those cases—which the Court considers solely as potentially persuasive authority—are distinguishable. For instance, *Ringhofer v. Mayo Clinic Ambulance* concerned plaintiffs' explanation that unnecessary medical testing did not honor the body as a temple and that modern medicine not utilized for life-saving purposes constituted idolatry. 102 F.4th 894, 902 (8th Cir. 2024). While Conner's SAC explains her belief that COVID testing is not necessary to protect public health, ECF No. 73 ¶ 96, she does not allege that she ever communicated that belief to the City, nor does she connect it to her religious objection or otherwise explain any distinction between necessary and unnecessary medical testing. Rather, as the Court has explained above, when the City inquired as to the relevance of any such distinction to her beliefs, she refused to answer. ECF No. 74-1 at 7–8. *Lucky v. Landmark Medical of Michigan*, also cited in Conner's opposition, concerned a plaintiff's allegation that god told her through prayer "that she would suffer spiritual harm if she received the COVID-19 vaccine" and also that she has a religious objection to vaccines of any kind. 103 F.4th 1241, 1242, 1243 (6th Cir. 2024). Conner made no such prayer-related allegations and refused to explain whether her objection reached all vaccines and medical tests or only the COVID vaccine and tests. In *Barnett v. Inova Health Care Services*, likewise, the plaintiff had been "instructed by God to abstain" from the COVID vaccine and that her "religious reasons for declining the covid vaccinations" were "personally directed by the true and living God"; Conner does not allege that God personally told her to abstain from receiving COVID tests.

125 F.4th 465, 468 (4th Cir. 2025); *see also Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 79, 82 (1st Cir. 2025) (plaintiff provided sufficient explanation to her employer in stating that she had not received any vaccine in at least twenty years and that doing so would violate her religious beliefs by "go[ing] against God by defiling my perfectly created body that He created in His image")

Neither the City nor this Court has ever questioned that Conner is a sincerely religious person. The City rightfully did, however, question whether Conner's objection to COVID testing genuinely flowed from her Christian beliefs, or whether it was instead secular in nature. Conner failed to provide the City with enough information to determine that her Christian beliefs genuinely conflicted with the City's COVID vaccination and testing policies. Even if she had adequately explained that she may not accept certain medical interventions or comply with certain policies, she nonetheless failed—and actually refused—to explain how her religion distinguishes between permissible and impermissible medical procedures or employer policies. The Court therefore dismisses her failure to accommodate claim for failure to state a claim.

The Court's last order resolved this issue on the same grounds and gave Conner an opportunity to amend her complaint. ECF No. 72 at 7–8. She did not add any allegations showing that she provided the City with sufficient information about the conflict between her beliefs and its policies. Rather, the parties seem to agree that the interactive process documents—attached to Conner's initial complaint and reattached to her opposition to the motion to dismiss the SAC—encapsulate the parties' communications during the relevant time period. The Court therefore finds that amendment to cure Conner's failure to provide the City with adequate notice would be futile and dismisses this claim with prejudice. *See Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir.1986) ("Although leave to amend 'shall be freely given when justice so requires,' it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." (citation omitted)).

**B.      Failure to Provide Religious Accommodation in Violation of FEHA**

"FEHA uses largely the same language and promotes the same objective as Title VII," so "the Title VII framework is applied to claims brought under FEHA." *Pinder v. Emp. Dev. Dep't*,

227 F. Supp. 3d 1123, 1136 (E.D. Cal. 2017); *see also Soldinger v. Northwest Airlines, Inc.*, 51 Cal. App. 4th 345, 370 n.11 (1996) (noting that "California courts look to federal cases interpreting Title VII in evaluating failure to accommodate allegations" under the FEHA); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1172 (9th Cir. 2001) ("The California courts consistently look to Title VII for guidance in interpreting FEHA.").

Although Title VII and FEHA are not necessarily coterminous,[9] neither party has identified any relevant distinctions between the analysis of one claim versus the other.  ECF No. 74 at 13; ECF No. 75 at 23–24.  The Court therefore dismisses the FEHA failure-to-accommodate claim for the same reasons that it dismisses the claim under Title VII.  Dismissal is without leave to amend.

### C.    Retaliation in Violation of Title VII

Title VII prohibits an employer from retaliating against an employee because the employee has taken action to enforce rights protected under Title VII.  *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 730 (9th Cir. 1986); 42 U.S.C. § 2000e-3(a).  Courts evaluate Title VII retaliation claims under the *McDonnell Douglas* burden-shifting framework and a plaintiff "can establish a prima facie case by showing that: 1) he engaged in a protected activity; 2) he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

As with failure-to-accommodate claims, the plaintiff need not necessarily plead a prima facie case of retaliation to survive a motion to dismiss.  *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300 (N.D. Cal. 2020).  "When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case 'to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *Id*. at 1300–01 (quoting *Achal v. Gate Gourmet,*

---

[9] *See Bolden-Hardge*, 63 F.4th at 1227 n.8 (declining to "address whether the undue hardship analysis under FEHA differs from the analysis under Title VII"); *Bordeaux v. Lions Gate Ent., Inc.*, No. 222CV04244SVWPLA, 2022 WL 19076668, at *6 (C.D. Cal. Dec. 28, 2022), *on reconsideration*, No. 222CV04244SVWPLA, 2023 WL 3667353 (C.D. Cal. May 5, 2023) (suggesting that FEHA's definition of religion is more restrictive than that under Title VII).

*Inc.*, 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015) (citations omitted)); *see also McGinn v. Hawaii Symphony Orchestra*, 727 F. Supp. 3d 915, 944 n.21 (D. Haw. 2024) ("Although a prima facie case is 'an evidentiary standard, not a pleading requirement,' the court may still consider those elements in determining whether a complaint pleads sufficient factual allegations to state a plausible claim of retaliation." (citations omitted)).

Conner's filings evince some confusion about the nature of a Title VII retaliation claim. The retaliation provision—as opposed to the statute's other provisions—protects employees from adverse actions taken because they sought to vindicate their rights under Title VII. *See* 42 U.S.C. § 2000e-3(a). In other words, Conner needs to show that she was fired *because she sought an accommodation*. Conner has instead repeatedly alleged that she was fired for insubordination because she refused to comply with the City's vaccination and testing policy. As the complaint states, "[t]he City admitted it terminated Plaintiff for no other reason than she would not submit to weekly testing or get vaccinated." ECF No. 73 ¶ 69. The complaint also attached Conner's termination letter, which states that she was fired for insubordination for refusing to comply with the City's policies, after the City declined to grant an accommodation exempting her. *Id*. at 35–36. Conner's opposition to the motion to dismiss also states that she "would have remained employed with the City of Emeryville but for her *need* for a reasonable religious accommodation"—not but for her *request* for a reasonable accommodation. ECF No. 75 at 26.

The distinction is important. These statements do not allege retaliatory firing, but firing for the legitimate reason that Conner intentionally failed to comply with her employer's policies, i.e., was insubordinate. *Scott v. Albertson's Inc.*, 225 F.3d 663 (9th Cir. 2000) ("Defendant has articulated a legitimate, nondiscriminatory reason for discharging Defendant, i.e., insubordination."). While firing an employee for insubordination could be unlawful if the insubordination resulted from the employer's failure to accommodate the employee's religious needs, the Court has already determined that Conner has not stated a claim for the failure to accommodate her religious needs here.

At no point does Conner allege facts suggesting that she was fired for seeking an

accommodation.[10]  Nor do any of the facts alleged in the complaint suggest that Conner was terminated for requesting an accommodation.  ECF No. 73 ¶¶ 53–71.  Rather, the facts alleged in the SAC show that the City engaged in a lengthy interactive process with Conner and that the City provided Conner with many opportunities to comply with the policy before terminating her for insubordination.  ECF No. 73 ¶ 4, *id.* at 35.

The Court concludes that Conner has failed to state a claim for Title VII retaliation.  *See Hodges v. Cedars-Sinai Med. Ctr.*, 91 Cal. App. 5th 894, 905 (2023) ("Plaintiff says she was terminated because she was '[un]ab[le] to get the vaccine.'  But this was *her* claimed motive in refusing to get the flu vaccine, not [the employer's] stated reason for terminating her.").  Because Conner has been afforded sufficient opportunities to plead retaliation and further amendment would be futile, the Court denies leave to amend.

### D. *Monell* Claims

To state a Section 1983 claim against the City, also known as a *Monell* claim, Plaintiff "must . . . establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.'"  *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022) (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).  Accordingly, Plaintiff must allege facts sufficient to establish that a constitutional violation occurred.  *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1021 (9th Cir. 2003).

#### 1. Violation of the Religion Clauses of the First Amendment

The First Amendment's Free Exercise Clause prohibits Congress from making any law prohibiting the free exercise of religion.  U.S. Const. amend. I.  "The right to exercise one's religion freely, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015) (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990)).  Courts must

---

[10] Conner does state that "[h]ad Plaintiff not asserted her constitutionally and legally protected religious freedom, Defendant would not have subjected her to adverse employment actions," ECF No. 73 ¶ 100, but this statement is conclusory and the Court does not consider it in evaluating the plausibility of Conner's claims.  *Iqbal*, 556 U.S. at 678–79.

1    uphold neutral and generally applicable rules challenged on Free Exercise grounds "if they are

2    rationally related to a legitimate government purpose." *Id*. at 1084.

3         In the order on the motion to dismiss the FAC, the Court dismissed with prejudice

4    Conner's Monell claim for violations of the Free Exercise Clause because she had already been

5    given one opportunity to cure the deficiencies in the complaint and failed to do so.  ECF No. 39 at

6    14.  It concluded that, like the original complaint, the FAC failed to allege that the City's COVID

7    policies were not "neutral, generally applicable, and rationally related to the legitimate

8    governmental purpose of providing a safe and healthy working environment during the COVID-19

9    pandemic."  ECF No. 39 at 13.

10        The Court again dismisses Conner's Free Exercise claims with prejudice.  Conner was not

11   given leave to amend these claims.  ECF No. 39 at 14.  She realleges the free exercise claims from

12   the original complaint and the FAC without significant modification.  *Compare* ECF No. 73

13   ¶¶ 102–10 *with* ECF No. 24 ¶¶ 47–57.  Finally, Conner does not appear to oppose the City's

14   motion to dismiss her Free Exercise claims, as she does not discuss them in her opposition.  ECF

15   No. 75 at 14–29.

16                    **2.    Equal Protection Violation Under Section 1983**

17        "To state a claim under [S]ection 1983 for a violation of the Equal Protection Clause, a

18   plaintiff 'must show that the defendants acted with an intent or purpose to discriminate against the

19   plaintiff based upon membership in a protected class,' and that plaintiff was treated differently

20   from persons similarly situated."  *Lam v. City & Cnty. of S.F.*, 868 F. Supp. 2d 928, 951 (N.D. Cal.

21   2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014) (quoting *Barren v. Harrington*, 152 F.3d 1193,

22   1194 (9th Cir. 1998)).  "In the equal protection context, just as in a Title VII disparate treatment

23   case, the fundamental question revolves around the plaintiff's ability to demonstrate a

24   discriminatory 'purpose' or intent . . . .  To that end, generally, when analyzing claims of disparate

25   treatment in employment under . . . § 1983, a district court is guided by Title VII analysis."  *Id*.

26        Conner's first complaint included a claim under Section 1983 that the City violated the

27   Equal Protection Clause of the Fourteenth Amendment.  ECF No. 1 ¶¶ 89–92.  The Court

28   dismissed that claim with leave to amend.  ECF No. 22 at 12–13.  Her second complaint did not

United States District Court
Northern District of California

1   include an Equal Protection claim.  *See* ECF No. 24 ¶¶ 38–62.  The Court nonetheless construed

2   her claims concerning the City's unequal treatment of her relative to April Shabazz as an equal

3   protection claim and dismissed the claim again.  ECF No. 39 at 13–14.  The Court reasoned that,

4   like the original complaint, the FAC and its appended exhibits lacked any facts that would support

5   a reasonable inference that the City acted with a discriminatory purpose in implementing the

6   policy, refusing to allow remote work as an accommodation, or terminating Conner's

7   employment.  ECF No. 39 at 14.  It also found that Conner had not "alleged that other employees

8   similarly situated were given the accommodation she requested or not terminated for a failure to

9   comply with the Policy."  *Id.*

10   Conner's SAC, which again does not clearly or explicitly allege an Equal Protection claim,

11   fails to cure the deficiency identified in the Court's two prior dismissal orders.  Conner adds a

12   section called "A Tale of Two Religious Exemption Requests."  ECF No. 73 ¶¶ 72–78.  That

13   section of the complaint alleges that Conner and Shabazz both submitted a written requests for

14   religious exemptions from COVID testing and vaccination, that they both affirmed that their

15   religious convictions were sincere, that they both refused to comply with COVID testing and

16   vaccination, that they both were asked the same follow-up questions by the City, that they both

17   referred the City back to their original requests in answering those follow-up questions, and that

18   Shabazz was allowed to continue working without testing or proof of accommodation while

19   Conner was fired.  *Id.*

20   The complaint does not, however, allege that Shabazz held a position involving similar

21   duties to those Conner held.  In other words, it does not allege that Shabazz was similarly situated

22   to Conner in terms of the feasibility of accommodation.  It also does not allege the contents of

23   Shabazz's original request for accommodation.  As a result, there are myriad potential

24   explanations regarding the different treatment given to Shabazz.  Among others, Shabazz may

25   simply have provided a more complete explanation to the City concerning her religious objections

26   than Conner did.[11]  Regardless, Conner has not alleged a any facts suggesting that a discriminatory

27

---

28   [11] In reaching this conclusion, the Court does not consider the documents concerning April
Shabazz's interactive process, which Conner attached to her opposition to the motion to dismiss

United States District Court
Northern District of California

purpose motivated the decision to fire her and retain Shabazz.

Connor has three times failed to state a claim for an Equal Protection violation. Dismissal with prejudice is therefore appropriate. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding amendment would be futile where plaintiff still failed to state a claim after having been granted leave to amend).

## CONCLUSION

For the reasons stated above, Conner's claims are dismissed with prejudice. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: January 5, 2026

_____
JON S. TIGAR
United States District Judge

*United States District Court*
*Northern District of California*

---

but not the complaint itself. *See* ECF No. 75-7–75-13.

28